UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:15-cv-20023-KAM

In Re:

IRAIN GONZALEZ,

Debtor
_____/

STATE OF FLORIDA DEPARTMENT OF
REVENUE,

      Appellant,

v.

IRAIN GONZALEZ

      Appellee.
_____/

**OPINION AND ORDER**

   This cause is before the Court on appeal by the State of Florida Department of Revenue ("Appellant"). Appellant seeks review of the Bankruptcy Court's order holding Appellant in contempt for violating the Bankruptcy Court's confirmation order ("Contempt Order") [DE 5-2 at 110-19], and its subsequent order awarding Irain Gonzalez ("Appellee") $21,360.00 in attorney's fees ("Attorney's Fees Order"). [DE 5-2 at 238-44]. The Court has carefully considered the appeal, the briefs of the parties, the entire record on appeal, and is otherwise duly advised in the premises.

**I. Background**

   There is no dispute relative to the facts and procedural background set forth in the Bankruptcy Court's Contempt Order [DE 5-2 at 111 *et seq.*]; therefore, this Court adopts the Bankruptcy Court's recitation of these items as though fully set forth herein.

The Bankruptcy Court granted Appellee's motion to hold Appellant in contempt, and determined that Appellee was entitled to reasonable attorney's fees and costs. [DE 5-2 at 110-19]. Subsequently, Appellee withdrew his request for compensatory and punitive damages by filing a "Notice of Determination Not to Pursue Compensatory and Punitive Damages" [Bank Ct DE 103, 11-23183-LMI], and the Parties agreed to abate Appellee's filing of detailed time records until after all avenues of appeal were exhausted. [DE 5-2 at 197].

Appellant appealed the Bankruptcy Court's Contempt Order to this Court. [Bank Ct DE 95, 11-23183-LMI]. This Court affirmed the Bankruptcy Court's Contempt Order. [DE 5-2 at 199-202].

Appellant then appealed this Court's ruling to the Eleventh Circuit Court of Appeals. [Bank Ct DE 122, 11-23183-LMI].  The Eleventh Circuit dismissed the appeal, *sua sponte*, for lack of jurisdiction, because the District Court's Order, having not yet determined the amount of attorney's fees, was not final and appealable to the Circuit Court. [DE 5-2 at 204-05]. Subsequently, the Bankruptcy Court entered its Attorney's Fees Order and awarded Appellee $21,360.00 in attorney's fees. [DE 5-2 at 238-44].

Appellant requests this Court to review both the Bankruptcy Court's Contempt Order and Attorney's Fees Order. Appellant seeks review of the Contempt Order because Appellant has interpreted the Eleventh Circuit's dismissal of Appellant's appeal as having held that this Court lacked jurisdiction over the first appeal of the Contempt Order. [DE 19 at 9].  Appellee has not cross-appealed to recover the substantial fees that were not awarded by the Bankruptcy Judge.

Appellee contends that the law of the case doctrine governs, and, thus, this Court is bound by its original order affirming the Contempt Order. [DE 16 at 17-18].  The Bankruptcy Court also viewed this Court's order as the law of the case [DE 5-2 at 241]. Although the Court

does not view the Eleventh Circuit's decision as having held that this Court did not have jurisdiction to rule on the appeal from the Contempt Order, to resolve any ambiguity on this issue, this Court will review the Contempt Order anew.

## II. Legal Standard

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a). The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*. *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009); *In re Club Assoc.*, 951 F.2d 1223, 1228-29 (11th Cir. 1992).

Here, this Court reviews the Bankruptcy Court's Contempt Order for an abuse of discretion. *See Diaz v. State of Florida Dept. of Revenue*, 647 F.3d 1073 (11th Cir. 2011). ). "A bankruptcy judge abuses [her] discretion if [she] commits an error of law or relies on factual findings that are clearly erroneous." *Id.* at 1082. "Before holding a litigant in civil contempt for violating a court order, a court must find by clear and convincing evidence that the order unambiguously proscribed the litigant's conduct." *Id.* at 1093 n. 17. Likewise, this Court reviews the Bankruptcy Court's Attorney's Fees Order for an abuse of discretion. *See Pierce v. Underwood*, 487 U.S. 552, 571 (1988).

## III. Discussion

### A. Bankruptcy Court's Contempt Order

Appellant's position is that a confirmed plan issued by a Bankruptcy Court that includes provisions for the payment of the debtor's domestic support obligations does not preclude a domestic support creditor from collecting sums directly from the debtor in the absence of injunctive language in the confirmed plan. Appellant argues that the Bankruptcy Court committed reversible error for finding persuasive and relying upon the Eleventh Circuit Court of

3

Appeals unpublished decision *In re Rodriguez*, 367 Fed. Appx. 25 (11th Cir. 2010), *cert. denied*, 131 S.Ct. 128 (2010).

*Rodriguez* held that the Florida Department of Revenue (the same Appellant here) could be held in contempt for having sent debt collection letters to a debtor relating to his child support delinquencies after the issuance of a confirmation order. *Rodriguez* states that under 11 U.S.C. § 1327(a), "once a bankruptcy plan is confirmed, the debtor and each creditor is bound by its terms. Here, the State violated the confirmation order by asserting an interest other than those provided for in the plan after confirmation." 267 Fed. Appx. at 28.

Having reviewed *Rodriguez* in light of the arguments made by Appellant, the Court agrees with the Bankruptcy Court that the conclusion reached in *Rodriguez* has not been impacted by the enactment of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The Court believes that had Congress intended the result Appellant urges this Court to adopt, it would have amended 11 U.S.C. § 1327 to provide that domestic support obligation creditors are not bound by confirmed plans. Congress did not do so.

The Court rejects Appellant's argument that in the absence of a specific injunction directed to Appellant in the confirmation order, the order did not unambiguously proscribe its conduct, which *Diaz* requires before a litigant can be held in civil contempt. Appellant's conduct was unambiguously proscribed by 11 U.S.C. § 1327(a). It was not necessary for the Bankruptcy Court to add anything to its order.  It bears noting that Appellant filed a proof of claim in the underlying bankruptcy case, and the confirmed plan contained provisions to pay 100% of Appellant's claim over time. [DE 5-2 at 5-9].  Appellant did not object to this plan.

Since the Bankruptcy Court did not commit an error of law, it was within its discretion to hold Appellant in contempt and order Appellant to pay Debtor's reasonable attorney's fees and costs.

B.  **Bankruptcy Court's Attorney's Fees Order**

The Bankruptcy Court awarded Appellee attorney's fees pursuant to 11 U.S.C. § 106(a)(3), which states that an "order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of 2412(d)(2)(A) of title 28." [DE 5-2 at 241]. The Court noted that both parties had assumed that this section applies to a sanctions award for contempt. [*Id*. at n. 8]. Because neither party had raised this issue, the Court did not consider whether there is a different standard applicable to such an award. [*Id*.].[1] Thus, the Court turns to Appellant's arguments that the Bankruptcy Court did not properly apply §106(a)(3).

Section 106(a)(3) looks to 28 U.S.C. §2412(d)(2)(A), the "Equal Access to Justice Act" ("EAJA"), for the applicable provisions and limitations on an award of attorney's fees against a governmental unit. Under the EAJA, attorney's fees are determined by the time expended and the attorney's hourly rate, subject to the restrictions set forth in 28 U.S.C. § 2412(d)(2)(A). *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002). Appellant challenges both the number of hours and the hourly rate awarded by the Bankruptcy Court.

---

[1]As a result of the decision of the United States Supreme Court in *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006), there is a question as to whether §106(a) has any continuing effect. The Court in *Katz* held that an express abrogation of the sovereign immunity of the States by Congress was not necessary because, in the plan of the Constitutional Convention, the States agreed "not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies.'" *Id.* at 377.  The Court also stated, however, that "Congress may, at its option, either treat States in the same way as other creditors insofar as concerns 'Laws on the subject of Bankruptcies' or exempt them from the operation of such laws." *Id*. at 379.  In the case of *In re Omine*, 485 F.3d 1305 (11th Cir. 2007), the Eleventh Circuit Court of Appeals held that the limitation on awards against governmental units contained in §106(a)(3) and 28 U.S.C. § 2412(d)(2)(A) still applied.  Even though that opinion was later withdrawn pursuant to a settlement among the parties, *see In re Omine*, 2007 WL 6813797, No. 06-11655-II, No. 6:05cv1633 (June 26, 2007), this Court finds it persuasive authority.  Moreover, because Appellee did not raise this issue below, and accepted the application of §106(a)(3), he waived any argument he might otherwise have had to challenge the restrictions contained in this provision.

1.  **Number of Hours**

Courts are obligated to exercise billing judgment when fee applicants do not. *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Courts must exclude excessive, redundant, or otherwise unnecessary hours from its calculation of attorney's fees. *Id.*

Appellee sought attorney's fees for a total of 153.6 hours for lead attorney James Schwitalla; 2.2 hours for attorney Kelly Roberts; and 4.0 hours for paralegal work. [DE 5-2 at 218]. The Bankruptcy Court reduced the total number of hours Appellee sought for Mr. Schwitalla's legal work by 101.3 hours, awarding fees for only 52.3 hours of Mr. Schwitalla's time. [DE 5-2 at 243]. It awarded the full 2.2 hours for Ms. Roberts' time, and denied reimbursement for the paralegal's time. [*Id.*]. In exercising its billing judgment, the Bankruptcy Court did not award attorney's fees for 52 hours spent on the appeal of the Contempt Order to this Court and the Eleventh Circuit, and an additional 49.3 hours that the Bankruptcy Court found to be excessive. [DE 5-2 at 241, 243]. Appellee does not contest these cuts before this Court.

Appellant argues that the Bankruptcy Court abused its discretion in determining the number of hours to award Appellee, because the Bankruptcy Court's decision was based upon a clearly erroneous assessment of the evidence. [DE 12 at 30-32]. Specifically, Appellant contests time entries spent on five particular issues, because it claims that these time entries are unreasonable, unnecessary, and not relevant to the outcome of the case. [*Id.*].

Appellant did not, however, raise any of these arguments before the Bankruptcy Court Judge. [DE 5-2 at 219-223]. In *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355 (1984), the Eleventh Circuit outlined five scenarios in which an appellate court may ignore the failure of a litigant to preserve an issue for appeal.

> [A]n appellate court generally will not consider a legal issue or theory unless it was presented to the trial court. This principle is not a jurisdictional limitation but merely a rule of practice, and "[t]he decision whether to consider an argument first made on appeal . . . is 'left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.'" The courts of appeals have identified certain exceptional circumstances in which it may be appropriate to exercise this discretion and deviate from this rule of practice. First, an appellate court will "consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice." Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance "where the interest of substantial justice is at stake." Fourth, "a federal appellate court is justified in resolving an issue not passed on below . . . where the proper resolution is beyond any doubt." Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

*Id*. at 360-361(citations omitted).

None of these scenarios are present here; therefore, this Court, in the exercise of its discretion, declines to address them. The Court does not find that the Bankruptcy Court abused its discretion in its determination of the number of hours to award Appellee for its attorney's fees.

**2. Hourly Rate**

The EAJA provides a cap on the rate at which attorney's fees can be assessed against a governmental unit of $125 per hour, unless "the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).[2] The Supreme Court has interpreted a "special factor" to refer to attorneys who have some distinctive knowledge or

---

[2] There is nothing in the record indicating that Appellee sought a cost of living adjustment to this amount; therefore, the Court does not include any such amount in its analysis herein.

7

specialized skill necessary for the litigation in question, rather than an attorney with an extraordinary level of general lawyerly knowledge and ability useful in all litigation. *Pierce v. Underwood*, 487 U.S. 552, 572 (1988). The Supreme Court set forth as examples of the former "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id*.

The Bankruptcy Court ruled that bankruptcy is a sub-speciality and that Appellee's attorney's specialization in chapter 13 consumer bankruptcy is a sub-speciality of the sub-speciality. [DE 5-2 at 242]. As such, the Bankruptcy Court found this to be a "special factor" that justified an upward adjustment from the statutory cap to $400 an hour for Mr. Schwitalla's time and $200 per hour for Ms. Roberts' time. [*Id*. at 242-43].[3]

Appellant claims that the Bankruptcy Court misconstrued the law, and consequently abused its discretion, by concluding that Appellee's attorney's expertise in bankruptcy law was a "special factor" that justified a fee award in excess of the statutory cap. [DE 12 at 27]. Appellant argues that bankruptcy law is not analogous to the practice of patent law or international law. [DE 12 at 28-29].

Appellant further argues that if a thorough knowledge of the Bankruptcy Code qualified as a "special factor" under the EAJA, then it would render § 106(a)(3) meaningless, because every bankruptcy attorney would qualify for enhanced fees. [DE 12 at 28]. Appellant cites to a Bankruptcy Court decision which commented that an attorney's specialization in bankruptcy law

---

[3]The Bankruptcy Court states that Mr. Schwitalla sought $550 per hour for his time; however, the submission to the Court does not support this conclusion. He sought $69,120.00 for 153.6 hours of his time, which computes to a rate of $450 per hour. [DE 5-2 at 218]. This rate is set forth at the beginning of his time records. [*Id*. at 208]. Ms. Roberts' billable rate was $250 per hour, not the $200 per hour the Court stated. [*Id*.].

8

did not qualify as a "special factor." *See In Re Moulton*, 195 B.R. 954, 959 (Bankr. M.D. Fla. 1996).[4]

Finally, Appellant argues that the Bankruptcy Court abused its discretion by determining that the fee should be further enhanced based upon Appellee's attorney's years of experience. [DE 12 at 29-30]. Appellant quotes the Bankruptcy Court's conclusion that "[b]ased on Mr. Schwitalla's years of experience, I find that it is reasonable for him to be compensated at the highest end of the scale — $400 an hour, a rate reserved for only the most experienced practitioners." [DE 5-2 at 243]. Appellant notes that the Supreme Court in *Pierce* specifically found the "work and ability of counsel" to be one of several routine reasons why market rates are what they are, and not a factor warranting enhancement of the hourly rate. [DE 12 at 29-30]. Appellant argues that if bankruptcy is a special factor under the EAJA, then the $200 rate the Court awarded for Ms. Roberts' time should also have been applied to Mr. Schwitalla's time. [*Id*. at 29].

Appellee counters that his attorney's specialty in consumer-debtor-chapter 13 litigation qualifies as a "special factor", because understanding bankruptcy law is no less demanding than understanding international laws. [DE 16 at 28]. He notes that the Bankruptcy Court found that his attorney has a sub-specialty, so it does not necessarily follow that all bankruptcy law practitioners would be entitled to enhancements. [*Id*. at 27-28]. He argues that the Bankruptcy Court's order focused on the nature of the sub-specialty when fixing the $400 per hour fee, and the reference to the attorney's years of experience simply related to determining market rate once the special factor was established. [*Id*. at 28-29].

---

[4]The Bankruptcy Court in *Moulton* ultimately awarded an enhancement in the hourly rate based upon "the continuing litigation and defense by the Government of totally indefensible conduct." 195 B.R. at 959. That result was affirmed on appeal to the district court. *United States v. Moulton*, Nos. 96-810-CIV-T-25(E), 80-822-BKC-8P3, 93-733, 1996 WL 511666 (M.D. Fla. June 28, 1996). That same "special factor" might arguably be applied to the conduct of the State of Florida Department of Revenue in the instant case.

9

Appellee also cites to Eleventh Circuit cases holding that having a specialized practice justifies a rate higher than the cap in the EAJA, citing to *Miccosukee Tribe of Indians of Florida v. United States*, No. 04-21448-CIV, 2010 WL 9034624 (S.D. Fla. Mar. 15, 2010); *Blasberg v. United States*, No. 94-1844-CIV-DAVIS, 1998 WL 774187 (S.D. Fla. June 3, 1998); *In Re Brickell Inv. Corp.*, Case Nos. 89-0715 and 89-1051, 1995 WL 478857 at *2-3 (S.D. Fla. March 24, 1995), aff'd sub nom., *Internal Revenue Service v. Brickell Inv. Corp.*, 89-0715-CIV-ARONOVITZ, 77 A.F.T.R. 2d 96-2544 (D. Ct. Fla. May 17, 1996). [DE 16 at 27]. Appellee also cites to two cases in California holding that an attorney's specialized skill in bankruptcy law could qualify as a "special factor." *In re Garcia*, 506 B.R. 89 (N.D. Cal. 2013); *In re Tom Carter Enterprises, Inc.*, 159 B.R. 557, 562 (Bankr. C.D. Cal. 1993).

Appellant replies that none of these Eleventh Circuit cases enhanced an award of fees solely on the basis that the attorney practiced bankruptcy law. [DE 19 at 10].

The Court agrees with Appellee that the *Miccosukee* case is inapposite, since the court there based its enhancement of the fee upon its finding that the attorney's "profound understanding of esoteric scientific principles and terms regarding water quality standards . . . constitutes a 'specialized skill' as opposed to 'general lawyerly knowledge and ability useful in all litigation.'" 2010 WL 9034624 at n.1.

While *In re Brickell Inv. Corp.* arose under 26 U.S.C. §7430, not the EAJA, and while the court there mentioned counsel's expertise in the areas of "tax, litigation, bankruptcy and appellate matters", the thrust of the decision was that counsel's specialty in bankruptcy law constituted a "special factor" which warranted an enhancement of the fee permitted by §7430. 1995 WL 478857 at *2-3.  It is notable that I.R.C. §7430 contains similar language to the EAJA

regarding a "special factor", and the court in *In re Brickell* cited to *Pierce v. Underwood*, 487 U.S. 555, 572 (1988), the seminal Supreme Court case interpreting this phrase under the EAJA.

*Blasberg*, too, arose under 26 U.S.C. §7430. The court approved an enhancement in the fee, holding that "tax law is every bit as much a specialty as immigration or patent law." 1998 WL 774187, *7.

Similarly, this Court finds that Appellee's attorney's sub-specialty in bankruptcy law is as much a "special factor" as the practice of tax law, immigration law, or patent law. Since the Bankruptcy Court found that Appellee's attorney had a sub-specialty within bankruptcy, it is not necessary for this Court to opine on whether every bankruptcy attorney is entitled to an enhancement. The finding of this sub-specialty distinguishes the instant case from *In Re Moulton*, 195 B.R. 954, 959 (Bankr. M.D. Fla. 1996).[5]

The Eleventh Circuit in *Jean v. Nelson*, 863 F.2d 759 (11th Cir. 1988) noted as to immigration lawyers:

> The dissent contends that attorneys practicing immigration law do not have any "distinctive knowledge or specialized skill *needful for the litigation in question*" within the meaning of that phrase as it is used in *Pierce*, 108 S.Ct. At 2554 (emphasis added). The majority agrees that not every immigration attorney or every immigration lawsuit warrants an upward adjustment of hourly rates and we would suggest that such is also the case in some patent or foreign law cases. Lawyers and judges could spend the balance of time arguing about the meaning and scope of the above-quoted phrase from *Pierce*. Interpretation of this phrase is better left to the discretion of the district court as application of the phrase will necessarily depend on the complexity of the case ("the litigation in question") and on the experience ("distinctive knowledge") and acquired expertise ("specialized skill") of the particular billing attorney.

863 F.2d at 774-75, n.12.

---

[5] *In re Headrick*, 285 B.R. 540 (Bankr. S.D. Ga. 2001) is similarly distinguishable. *In re Headrick* relied upon *In re Moulton* in finding that "a bankruptcy specialty was not a special factor alone to increase the hourly rate". *Id*. at 548. The decision contains no discussion of the possibility of a sub-specialty within bankruptcy.

11

This Court cannot say that the Bankruptcy Court committed an error of law or relied upon factual findings that were clearly erroneous as to the conclusion that there existed a "special factor" warranting an enhancement of the attorney's hourly rate. However, the same cannot be said for the $400 hourly rate applied by the Bankruptcy Court.

After citing to *Pierce v. Underwood*, the Bankruptcy Court held that the work of both of the Debtor's attorneys (Mr. Schwitalla and Ms. Roberts) warranted an upward adjustment from the EAJA rate, because Chapter 13 consumer bankruptcy is a sub-specialty. [DE 5-2 at 242]. In setting the increased amount, the Court noted:

> I have had the occasion to review hundreds of chapter 13 fee applications that include hourly rates. The hourly rates I have seen in these applications range from $225 an hour to $400 an hour. . . . Based on Mr. Schwitalla's years of experience, I find that it is reasonable for him to be compensated at the highest end of the scale – $400 an hour, a rate reserved for only the most experienced practitioners. Ms. Roberts' rate of $200 an hour is reasonable for her experience. So I will apply the $400 an hour rate to my review of Mr. Schwitalla's time records.

[*Id*. at 243].

The Court agrees with Appellant's objection that the Bankruptcy Court enhanced the fee based, in part, upon counsel's ability. *Pierce* specifically described the reliance upon this factor as an abuse of discretion. 487 U.S. at 573. The Bankruptcy Court set the threshold rate for someone practicing in the relevant area at $225 per hour. Any amount in excess of that would necessarily depend solely upon the experience of the particular attorney, which is prohibited by *Pierce*. Restricting counsel's rate to the lowest rate within the particular specialty respects the goal of the EAJA to limit the amount of fees that can be recovered from a governmental unit.

That only $200 per hour was awarded for Ms. Roberts' time does not mean that Mr. Schwitalla's time charges should be similarly limited. As noted above, the Bankruptcy Court

misstated Ms. Roberts' billable rate, which was $250 per hour.[6]  The amount awarded for Mr. Schwitalla's time must be reduced to $225 per hour based upon the Bankruptcy Court's own analysis of the rates applicable to his specialty, and this case is hereby remanded to the Bankruptcy Court to issue a judgment reflecting this reduction.  In all other respects, the Bankruptcy Court's two orders are affirmed.

### IV. Conclusion

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that the decision on appeal of the Bankruptcy Court **[DE 1]** is **AFFIRMED IN PART** as to the appeal from the Bankruptcy Court's order holding Appellant in contempt for violating the Bankruptcy Court's confirmation order; **AFFIRMED IN PART** as to the award of 54.5 hours for Appellee's legal fees; and **REVERSED IN PART** as to the award of $400 per hour for Mr. Schwitalla's legal fees.  This matter is **REMANDED** to the Bankruptcy Court to issue a judgment awarding Irain Gonzalez for 52.3 hours of Mr. Schwitalla's fees at the rate of $225 per hour and for 2.2 hours of Ms. Roberts' time at the rate of $200 per hour.  The **CLERK** shall **CLOSE** this case.  Any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 29th  day of September, 2015.

_____
KENNETH A. MARRA
United States District Judge

---

[6]Since Appellee has not appealed from the Bankruptcy Court's order setting Ms. Roberts' rate at $200 per hour, this Court will not adjust it now.

14